UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────

CARIOL J. HORNE,

                              Plaintiff,

              -vs-                                            07-CV-781C

BUFFALO POLICE BENEVOLENT ASSOCIATION,
INC., et al.,

                              Defendants.

───────────────────────────────────────

APPEARANCES:    ANTHONY L. PENDERGRASS, ESQ., Buffalo, New York, Attorney
                for Plaintiff.

                LAW OFFICES OF W. JAMES SCHWAN (W. JAMES SCHWAN,
                ESQ., OF COUNSEL), Buffalo, New York, Attorneys for
                Defendants Buffalo Police Benevolent Association, Robert P.
                Meegan, Jr., Law Offices of W. James Schwan, and W. James
                Schwan.

                HODGSON RUSS LLP (JOSEPH S. BROWN, ESQ., OF
                COUNSEL), Buffalo, New York, Attorneys for Defendants City of
                Buffalo, Byron W. Brown, Tracey Healy-Barker, H. McCarthy
                Gipson, and Byron Lockwood.

## INTRODUCTION

        Following the filing of plaintiff's second amended complaint (Item 48), defendants

filed motions to dismiss (Items 55, 58).  Plaintiff is a former Buffalo police officer who was

terminated from service on May 8, 2008.  She seeks compensatory and other damages

from the City of Buffalo for back pay, lost benefits, loss of opportunity, and pain and

suffering.  For the reasons that follow, the motions to dismiss are granted, and the

complaint is dismissed.

**BACKGROUND AND FACTS**

Plaintiff commenced this action with the filing of a complaint on November 16, 2007 (Item 1). She filed an amended complaint on February 8, 2008 (Item 12), asserting causes of action pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 2000e; 29 U.S.C. § 185; and state law causes of action for breach of contract, breach of duty of fair representation, promissory estoppel, fraud, intentional and negligent infliction of emotional distress, and negligence. On February 28, and March 3, 2008, defendants filed motions to dismiss the amended complaint (Items 13, 14). Following a motion to extend the time in which to respond, plaintiff was directed to respond to the motions to dismiss on or before May 30, 2008 (Item 21). On that date, without leave of court, plaintiff filed a second amended complaint and a motion for a temporary restraining order ("TRO") (Items 22, 23). In an order dated July 7, 2008, the court denied plaintiff's motion for a TRO and instructed her to seek leave to file a second amended complaint (Item 34).

In an order filed December 10, 2008, the court granted plaintiff's motion in part (Item 47). The second amended complaint was filed on December 18, 2008 (Item 48). Answers to the complaint were filed on January 15 and 16, 2009 (Items 50, 51). On March 19, 2009, defendants Buffalo Police Benevolent Association ("BPBA"), Robert P. Meegan, Jr., Law Offices of W. James Schwan, and W. James Schwan (the "Union Defendants") filed a motion to dismiss the complaint (Item 55). On March 25, 2009, defendants Tracy Healy-Barker, Byron Lockwood, the City of Buffalo, and H. McCarthy Gipson (the "City Defendants") filed a motion to dismiss the complaint (Item 58). Plaintiff filed a response to the motions on April 14, 2009 (Item 61), and the City Defendants filed

a reply on July 1, 2009 (Items 65, 66). The court determined that oral argument was not necessary.

In her second amended complaint, plaintiff sets out eighteen causes of action. She concedes that causes of action VI through IX, asserting the breach of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, should be dismissed. *See* Item 61, p. 3. In the remaining fourteen causes of action, plaintiff alleges the violation of Title 42 U.S.C. §§ 1981, 1983, 1985, 1986, 2000e, *et seq.*, breach of contract, breach of the duty of fair representation, fraud, negligent and intentional infliction of emotional distress, negligence, and the violation of New York General Municipal Law § 207(c).

Plaintiff states that she was a member of the Buffalo Police Department since March 1988 (Item 48, ¶ 10). She alleges that in September 1999, "supervisors within [the Buffalo Police Department] created a hostile work environment in retaliation for Plaintiff filing charges against a [Niagara Frontier Transportation Authority] police officer who had assaulted her son." *Id.,* ¶ 20. Her employment was terminated on or about June 12, 2000, but she was ordered to be reinstated following arbitration. *Id.,* ¶ 21. The arbitrator's decision was affirmed by the New York State Supreme Court, Appellate Division, Fourth Department, and plaintiff was reinstated on June 6, 2005. *Id.,* ¶ 22. Plaintiff alleges that during the approximately five years between her termination and reinstatement, she suffered unspecified "severe, permanent and irreparable harm . . . ." *Id.,* ¶ 23.[1]

---

[1] Plaintiff also alleges that she has yet to be compensated for her lost wages and benefits, *see* Item 48, ¶¶ 24, 56, but the issue has been resolved since the filing of the second amended complaint. *See* Item 65, Exh. C.

Plaintiff further alleges that she was the victim of employment discrimination when she was directed to participate in a refresher training course in November 2005 following her return to the police force (Item 48, ¶ 25). She alleges that the Buffalo Police Department ("BPD") "continued in its hostility" toward her, subjecting her to employment discrimination and retaliation, and attempting to terminate her employment. *Id.* She was charged with disciplinary infractions as a result of her failure to follow orders directing her to participate in the training. After a departmental hearing, in a decision dated November 6, 2006, the charges against plaintiff were dismissed. *Id.,* ¶¶ 26-27.

On November 1, 2006, plaintiff responded to a radio call for a police officer in need of assistance. Plaintiff went to 707 Walden Avenue in the City of Buffalo and observed another officer holding a civilian in a "choke hold." Plaintiff alleges that she removed the officer's arm from the suspect's throat, was struck in the face by the other officer, and sustained various injuries. *Id.,* ¶¶ 28-31. Following this incident, plaintiff was placed on Injured on Duty ("IOD") status and received salary and benefits pursuant to New York General Municipal Law § 207-c. *Id.,* ¶ 32. However, on September 24, 2007, IOD status was rescinded. Plaintiff alleges that this was done without a required due process hearing and in retaliation for her attempt to have her disciplinary hearing open to the public. *Id.,* ¶ 34. IOD status was reinstated on October 2, 2007. Plaintiff remained on IOD status until February 15, 2008, when it was rescinded, again without a hearing. Plaintiff was then assigned to the Video Surveillance Division. *Id.,* ¶ 35.

Plaintiff was charged with departmental violations as a result of the incident of November 1, 2006 (Item 48, ¶ 44). She alleges that the Union Defendants represented

both her and the other officer involved in the incident without counseling her as to a potential conflict of interest. *Id.,* ¶ 46. It is further alleged that on July 16, 2007, the Union Defendants "suddenly and without notice" withdrew their legal representation of plaintiff at the disciplinary hearing. *Id.,* ¶ 49. Plaintiff alleges that the defendants entered her personnel records into the record without her consent. *Id.*, ¶ 50. On May 8, 2008, after having been "made to endure a hostile work environment in which she was continually retaliated against," plaintiff's employment was terminated. *Id.,* ¶ 40. Plaintiff was also advised that her salary and benefits would likewise terminate effective June 1, 2008. *Id.,* ¶ 41.

Plaintiff alleges, without factual elaboration, that defendants "have conspired to adversely impact Plaintiff's contractual rights to compensation, to create a hostile work environment, and to retaliate and discriminate against Plaintiff." Item 48, ¶ 58. She also states that the defendants have "conspired to create a hostile work environment, and adversely impact Plaintiff's right to make and enforce contract [sic] through their refusal to timely process Plaintiff's grievances, in retaliation for Plaintiff's defense of police departmental disciplinary charges filed against Plaintiff." *Id.,* ¶ 61. Plaintiff alleges that the defendants allowed the disciplinary hearing regarding the 2006 incident to go forward without properly designating the hearing officer. *Id.,* ¶ 51. Plaintiff also alleges that the BPD failed to release her personnel records for her New York State disability retirement application. *Id.,* ¶ 40.

In response to the motion, the City Defendants have submitted several state court documents. The first is an order, dated August 21, 2008 and signed by then-Justice

Joseph G. Makowski, in which the court denied a motion by plaintiff to renew and dismissed an order to show cause brought by plaintiff pursuant to New York Civil Practice Law and Rules ("CPLR") Article78 (Item 59, Exh. A) (Case No. 2008-2417). The second document is plaintiff's Article 78 petition, filed September 2, 2008 (Case No. 2008-8689), in which she argued that the hearing officer was not properly designated and had no jurisdiction to conduct the disciplinary hearing with regard to the November 2006 incident. *Id.,* Exh. B. Exhibit C is the transcript of an oral decision on the record of then-Justice Makowski, in which he dismissed the Article 78 petition. *Id.,* Exh. C. Exhibit D is an additional Article 78 petition filed by plaintiff on September 8, 2008 (Case No. 2008-10228), in which she sought reinstatement as a police officer. *Id.,* Exh. D. Exhibit E is an order to show cause in the arbitration proceeding regarding plaintiff's wrongful termination in 2000. As a non-party, plaintiff sought compensation for lost wages and benefits. *Id.,* Exh. E.

Attached to a reply declaration (Item 65), the City Defendants have submitted further documents. There is an order dated April 16, 2009 of the Hon. Tracey A. Bannister dismissing plaintiff's Article 78 petition dated September 2, 2008 (Case No. 2008-8689) (Item 65, Exh. A). In another order dated April 16, 2009, Justice Bannister denied a motion to dismiss plaintiff's Article 78 petition of September 8, 2008 (Case No. 2008-10228) and ordered the City of Buffalo to file an answer to the petition. *Id.,* Exh. B. Finally, in a memorandum decision dated May 26, 2009 and an order dated July 10, 2009, the Hon. Donna Siwek found that plaintiff was bound by a settlement agreement executed September 26, 2006 regarding back pay as a result of her wrongful 2000 termination.

Justice Siwek directed the City of Buffalo to pay plaintiff $165,055.22 plus the cash value of any accrued vacation time. *Id.,* Exh. C.

## DISCUSSION

### 1. Legal Standard

To survive a motion to dismiss, plaintiff must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___U.S.___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In *Ashcroft v. Iqbal*, the Supreme Court set forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court generally may only consider facts stated in the complaint or "[d]ocuments that are attached to the complaint or incorporated in it by reference . . . ." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Gillingham v. Geico Direct*, 2008 WL 189671, *2 (E.D.N.Y. January 18, 2008) (same). A document not appended to the complaint may be considered if the document is "incorporated [in the complaint] by reference" or is a document "'upon which [the complaint] *solely* relies and . . . is *integral to the complaint* . . . .'" *Roth,* 489 F.3d at 509 (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)). A district court may also "rely on matters of public record in deciding a motion to dismiss under [R]ule 12(b)(6)." *Parks v. Town of Greenburgh*, 2009 WL 2628516, at *2 (2d Cir. August 27, 2009); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998), *cert. denied,* 525 U.S. 1103 (1999) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)").

## 2. Plaintiff's Claims Pursuant to Title 42 U.S.C. §§ 1981, 1985, and 1986

Plaintiff has alleged the violation of several federal civil rights statutes–Title 42 U.S.C. §§ 1981, 1985, and 1986. A common requisite to all these statutes is that action must have been taken by the defendant that is motivated by racial or other discriminatory animus.

To state a claim under section 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, make and enforce contracts,

sue and be sued, give evidence, etc.).  *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

The four elements of a section 1985(3) claim are: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.  *See United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983).  Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  *Id.* at 829.

Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so."  *Katz v. Morgenthau*, 709 F. Supp. 1219, 1236 (S.D.N.Y.), *aff'd in part and rev'd in part on other grounds*, 892 F.2d 20 (2d Cir. 1989).  Thus, a section 1986 claim must be predicated upon a valid section 1985 claim.  See *Dacey v. Dorsey*, 568 F.2d 275, 277 (2d Cir.), *cert. denied*, 436 U.S. 906 (1978).

Plaintiff alleges that she was terminated from the police force in 2000 in retaliation for filing a charge against an NFTA officer who assaulted her son.  Plaintiff was later reinstated following an arbitration and subsequent legal proceedings.  She alleges that she was never compensated for the time between her termination and reinstatement, but documents provided to the court in support of the motion to dismiss indicate that the

compensation issue has been resolved. In a proceeding in New York State Supreme Court, plaintiff was found to be bound by a previous settlement agreement regarding the amount of compensation owed to her, a settlement which she later sought to repudiate. Following her reinstatement, she was ordered to attend refresher training. She objected to this order and, although it is not entirely clear from the complaint, she was charged with departmental violations for her failure to participate. After a hearing, these charges were dismissed. Thereafter, plaintiff was involved in an incident with another officer. She was injured during the incident and was placed on IOD status. IOD status was later rescinded, allegedly without a hearing, and plaintiff was placed on light duty. As a result of that incident of November 2006, plaintiff was brought up on departmental charges, was provided a hearing, and was terminated following the hearing. Plaintiff has challenged her termination in New York State Court pursuant to Article 78 of the CPLR on the ground, *inter alia,* that the hearing officer was not properly designated. According to state court documents submitted in support of the motion, that claim was dismissed, although it appears that one of her Article 78 petitions with regard to her termination is still pending. Plaintiff also complains that the Union Defendants have failed to process her grievances against the BPD and withdrew from representation of her at her disciplinary hearing without notice.

Plaintiff has failed to sufficiently allege any claims under sections 1981, 1985, or 1986. She has alleged, of course, that she is a "Black/African-American female," and she complains of various actions taken by the defendants in the course of her employment as a Buffalo police officer. With respect to her section 1981 claim, plaintiff alleges that the defendants have deprived her of the right to make and enforce contracts. It is unclear from

the complaint to what contracts plaintiff refers, and the court can only assume she refers to her status as a civil service employee as a contract of employment. In any event, she provides no factual support for her claim that any alleged violation of section 1981 was motivated by racial or gender animus. Additionally, plaintiff fails to allege any facts that would suggest that her grievances were ignored or other actions were or were not taken by the Union Defendants on the basis of her race or gender.

With respect to her claim pursuant to section 1985, plaintiff has failed to allege facts to indicate a conspiracy among the defendants or any action taken with discriminatory animus. "Broad allegations of conspiracy are insufficient . . . ." *Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir. 2009). Plaintiff must provide a "'factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Webb v. Gourd,* 340 F.3d 105, 110-11 (2d Cir. 2003), *cert. denied,* 540 U.S. 1110 (2004), quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000). As plaintiff has failed to state a valid section 1985 claim, she has also failed to state a section 1986 claim.

A plaintiff alleging racial or gender discrimination must do more than recite conclusory assertions. "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly,* 127 S.Ct. at 1974). It is not enough for the plaintiff to state that she is an African-American woman and thus the defendants' actions were discriminatory. "[A] complaint consisting of nothing more than naked assertions, and setting forth no facts upon

which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6)." *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978) (per curiam).  Accordingly, Counts I, III, and IV are dismissed.

### 3.  Section 1983 Claim

Plaintiff has also alleged the violation of 42 U.S.C. § 1983.  The statute provides that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  Pursuant to the Supreme Court's decision in *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658 (1978), a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."  *Monell*, 436 U.S. at 691.  It is well established that a plaintiff stating a section 1983 claim by a municipal entity must show that the violation was the result of municipal custom, policy, or practice. *Fitzgerald v. Barnstable Sch. Comm.*, ____ U.S. ____, 129 S.Ct. 788, 797 (2009); *see also Monell*, 426 U.S. at 692-96. Additionally, to the extent that officials are sued in their individual capacities, a claim will fail under 42 U.S.C § 1983 if there are no allegations of personal involvement in the constitutional violation.  *Al-Jundi v. Estate of Rockefeller,* 885 F.2d 1060 (2d Cir. 1989).

As with the civil rights statutes previously discussed, plaintiff has failed to allege a valid section 1983 claim.   She states that the defendants created a hostile work environment, discriminated against her, retaliated against her, and terminated her

employment.  She alleges no facts to give substance to this claim.  To the extent that she has alleged that the City Defendants rescinded her IOD status without a hearing, plaintiff's due process claim must fail.  Due process is not violated when the state provides an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 531-33 (1984); *Hellenic American Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880 (2d Cir. 1996).  Assuming plaintiff had a property interest in her IOD status and was entitled to a hearing, a proceeding under Article 78 challenging the rescission of IOD status and the denial of benefits under General Municipal Law § 207-c offered an adequate post-deprivation remedy.  *See Massi v. Flynn*, 377 F.3d 200, 208 (2d Cir. 2004) (Article 78 proceeding provided meaningful remedy for police officer seeking benefits under statute).  Additionally, plaintiff has failed to identify specific conduct by any individual defendant, and has failed to allege a municipal custom, policy, or practice that deprived her of rights protected by the Constitution.  As stated above, "[t]hreadbare recitals of the elements of the cause of action" will not suffice; legal conclusions "must be supported by factual allegations."  *Ashcroft v. Iqbal,* 129 S.Ct. at 1949-50.  Accordingly, plaintiff's section 1983 cause of action (Count II) must be dismissed.

### 4.  Title VII Claim

Plaintiff alleges that she was the victim of employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").  Title VII makes it unlawful for an employer or labor organization "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §

2000e-2(a)(1).[2]  Title VII also "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII . . . ." *Kessler v. Westchester County Dep't of Soc. Servs.,* 461 F.3d 199, 205 (2d Cir. 2006).

Plaintiff has failed to allege a violation of Title VII.  While her complaint contains the terms that are familiar in these cases, such as "hostile work environment," "retaliation," and "discrimination," her allegations are not supported by facts.

> To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct:  (1) 'is objectively severe or pervasive–that is, . . . [the conduct] creates an environment that a reasonable person would find hostile or abusive;' (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive;' and (3) 'creates such an environment because of the plaintiff's sex [or other protected status].'

*Patane v. Clark,* 508 F.3d 106, 113 (2d Cir. 2007) (per curiam) (quoting *Gregory v. Daly,* 243 F.3d 687, 691-92 (2d Cir. 2001)).  Here, plaintiff has not provided a single example of hostile or abusive treatment by the defendants that would constitute a hostile work environment.  Likewise, to prevail on a Title VII disparate treatment claim, a plaintiff must ultimately prove that (1) she is a member of a protected class; (2) she is competent to perform the job or is performing her duties satisfactorily; (3) she suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on membership in the protected class.  *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005).  Here, the only example of "disparate treatment" is plaintiff's allegation that she was ordered to

---

[2]  Plaintiff concedes that individuals are not subject to liability under Title VII, and accordingly, all Title VII claims against any individual defendants must be dismissed for this reason as well.  *See Patterson v. County of Oneida,* 375 F.3d 206, 221 (2d Cir. 2004).

attend refresher training after a hiatus of five years. Even if this were considered an "adverse employment action" for purposes of Title VII,[3] plaintiff failed to allege any facts to plausibly suggest that this action was taken on the basis of her race or gender. Additionally, the disciplinary charges arising from her participation, or lack thereof, in the training were dismissed, and plaintiff gives no other examples of similarly situated officers being treated differently than her. Finally, plaintiff provides no factual support for any allegation that her employment was terminated on the basis of her race or gender.

Plaintiff also fails to allege that she suffered any employment action in retaliation for her complaints about discrimination.

> To state a claim for retaliation in violation of Title VII, a plaintiff must plead facts that would tend to show that: (1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action.

*Patane,* 508 F.3d at 115 (citing *Feingold v. New York*, 366 F.3d 138, 156 (2d Cir. 2204)).

Plaintiff makes no attempt to characterize the alleged charge against an NFTA officer who assaulted her son as "protected" activity under Title VII for purposes of a retaliation claim, nor is there any attempt to factually connect her 2000 termination with the charge against the NFTA officer. The only arguably "protected activity" that plaintiff has alleged is the filing of union grievances against the BPD. However, plaintiff makes no attempt to specify the grievances filed, does not state whether the City Defendants were aware of the grievances,

---

[3] An actionable adverse employment action is "a materially significant disadvantage with respect to the terms of [plaintiff's] employment," *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 128 (2d Cir. 2004) (internal quotation marks omitted), such as "termination of employment, a demotion . . ., a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *See Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir. 2000).

and makes no causal connection between the filing of grievances and any adverse employment action, such as the rescission of her IOD status or her eventual termination. Accordingly, plaintiff has failed to plead retaliation under Title VII.

To the extent that plaintiff alleges that the Union Defendants breached their duty of fair representation in violation of Title VII, this claim must also fail. Plaintiff has not offered any factual allegations to support her claim that the union was motivated by racial or gender-based animus in failing to pursue her grievances or in withdrawing from representation at her disciplinary hearing. *See Vargas v. Hill,* 152 F. Supp. 2d 315, 319 (S.D.N.Y. 2001) (plaintiff failed to proffer any evidence to indicate that defendants acted with any racial animus).

The standard on a motion to dismiss, while not stringent, requires factual amplification so as to render the claim plausible. *See Boykin v. KeyCorp,* 521 F.3d 202, 213 (2d Cir. 2008). In other words, "[l]egal conclusions and 'threadbare recitals of the elements of a cause of action' do not suffice to state a claim . . . ." *Ebusinessware, Inc. v. Tech. Servs. Group Wealth Mgmt. Solutions, LLC*, 2009 WL 5179535, at *6 (S.D.N.Y. December 29, 2009) (quoting *Ashcroft v. Iqbal,* 129 S.Ct. at 1949). Although plaintiff need not allege specific facts establishing a *prima facie case* of discrimination, *Boykin,* 521 F.3d at 212 (quoting *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 508 (2002)), absent any facts sufficient to provide defendant with "fair notice" of the grounds on which such claims rest, the complaint must be dismissed. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Here, plaintiff provides no factual support whatsoever for her claims of employment discrimination. Even accepting the truth of plaintiff's allegations, they are insufficient to

provide fair notice of her claims.  Accordingly, the plaintiff's Title VII cause of action (Count V) is dismissed.

## 5.  State Law Claims

In her remaining nine causes of action, plaintiff has alleged various state law claims, including breach of contract (Count X), breach of the duty of fair representation (Counts XI and XII),[4] fraud (Counts XIII and XIV),[5] negligent infliction of emotional distress (Count XV), intentional infliction of emotional distress (Count XVI), negligence (Count XVII), and the violation of New York General Municipal Law § 207-c (Count XVIII).  Defendants have advanced several arguments why the state law claims should be dismissed, primarily plaintiff's failure to allege facts sufficient to state a cause of action and her failure to file a notice of claim with respect to her tort claims.  While these arguments are valid, the claims must be dismissed for jurisdictional reasons.  "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  With the dismissal of plaintiff's federal claims, there remains no independent jurisdictional basis for the state law claims.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law

---

[4]  These two causes of action are identical, except that Count XI is titled "Promissory Estoppel: Breach of Duty of Fair Representation."

[5]  These two causes of action are identical, except that Count XIII is titled "Promissory Estoppel: Fraud."

claims"); *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *Marcus v. AT & T Corp.,* 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). Accordingly, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims and dismisses them.

## CONCLUSION

The defendants' motion to dismiss is granted, and the complaint is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendants and to close this case.

So ordered.

```
_____\s\ John T. Curtin_____
JOHN T. CURTIN
   United States District Judge
```

Dated: May  25      , 2010
p:\opinions\07-781.april82010